HORNSBY, Chief Justice.
Jeffrey Beck Clopton was convicted of fishing with illegal commercial gear and of fishing without a license in fresh water, pursuant to Ala.Code 1975, § 9-11-142, and Rules of the Alabama Department of Conservation and Natural Resources, 3 Alabama Administrative Code, § 220-2-.46(2)(e). Taitón Berk White, Jr., was convicted of fishing with illegal commercial gear and of fishing with untagged commercial gear, pursuant to Ala.Code 1975, § 9-11-147, and Rules of the Alabama Department of Conservation and Natural Resources, 3 Alabama Administrative Code, § 220-2-.46(2)(e). Their cases were consolidated. The boat, trailer, motor, and net involved were confiscated, and both defendants were fined $500 for fishing with illegal commercial gear. Each was also fined an additional $100 for his second conviction. The Court of Criminal Appeals reversed the convictions, holding that the “prosecution failed to prove whether they were fishing in fresh or salt water as a matter of fact.” We granted certiorari review.
FACTS
On November 13, 1990, Clopton and White were fishing in the Blakeley River approximately four and one-half to five miles from the causeway bridge on Interstate Highway 10 in Baldwin County, Alabama. They were fishing with a net having mesh measuring one and three-quarters inch knot to knot. The net mesh was of a legal size for fishing in salt water, but it was smaller than the size legally allowed for fresh water. In fresh water, the mesh of the net must not be less than three inches knot to knot. A rule of the Alabama Department of Conservation and Natural Resources, 3 Alabama Administrative Code, § 220-2-.46(2)(e), provides:
“The following is hereby designated as legal fishing equipment and methods for the taking of commercial or non-game fish in the fresh waters of this State. Any other equipment or methods used in the taking of commercial or non-game fish is a violation of this regulation.
[[Image here]]
“(e) Gill and Trammel Nets the mesh of which is not less than 3 inches knot to knot with a stretch or spread of not less than 6 inches after net has been shrunk.”
Officers Dennis Sanford and John Plova-nich of the Department of Conservation boarded Clopton and White’s boat and arrested them for operating a net with a mesh size under three inches knot to knot. Clopton was also charged with fishing without a license, and White was charged with fishing with untagged commercial gear. At the time of the arrest, Clopton and White had caught an estimated 300 to 500 pounds of fish.
According to the testimony of Sanford, the Department of Conservation considers water north of the causeway bridge fresh water, and water south of the causeway bridge salt water. However, at various times the water north of the bridge is actually salt water, and at other times the water south of the bridge is actually fresh water. Sanford testified that on the date Clopton and White were arrested he did not know whether the water in that area was fresh or salt. John Plovanich testified that *1093 there were no signs or markers to indicate the size of the net mesh required for fishing in the area north of the causeway bridge.
There are three issues before this Court: (1) whether the Court of Criminal Appeals erred by reversing Clopton and White’s convictions for fishing with illegal commercial gear; (2) whether that court erred by reversing Clopton’s conviction for fishing without a commercial fishing license; and (3) whether it erred by reversing White’s conviction for fishing with untagged commercial gear.
ILLEGAL GEAR
Having carefully read and considered the record, together with the briefs of counsel, we conclude that the size of the net mesh legally allowed for fishing varies depending on whether a person is fishing in salt water or in fresh water. Because the State failed to prove as a matter of fact that the defendants were fishing in fresh water, it follows that the Court of Criminal Appeals’ reversal of the convictions for fishing with illegal commercial gear (wrong size net) is due to be affirmed. However, proof of whether the defendants were fishing in salt water or in fresh water is not an element of the offenses of fishing without a commercial fishing license and fishing with untagged commercial gear.
LICENSE
The Court of Criminal Appeals reversed Clopton’s conviction for fishing without a commercial fishing license because it found that “the prosecution [had] failed to prove whether they were fishing in fresh or salt water as a matter of fact.” The State maintains that Ala.Code 1975, § 9-11-142, does not require a determination of whether Clopton was fishing in fresh water or in salt water in order to support a conviction for fishing without a commercial fishing license.
The record does not contain a copy of the charging instrument. In the record, this offense is described as fishing without “commercial fresh water fishing license” and “fishing commercial gear without a license.” The Code section Clopton was charged with violating, Ala.Code 1975, § 9-11-142, does not make a distinction between fresh and salt water.
Section 9-11-142, requiring fishing licenses, reads:
“It is the intent of this article that the license provided herein for the taking of commercial or nongame fish from the public impounded waters and navigable streams of the state of Alabama shall be issued upon an individual basis only, and each person engaging in such activities or operations shall be required to purchase said license.”
Clopton was fishing for nongame fish in a navigable stream or river in Alabama without a license. Sanford testified:
“Q. Do you know whether or not this is a navigable stream or river in the State of Alabama?
“A. Yes, it is.
“Q. Are these nongame fish or game fish?
“A. Nongame.
“Q. Would this be a commercial license or a personal license?
“A. Be a commercial fresh water fishing license.
“Q. And did [Mr. Clopton] have a commercial license to take nongame fish?
[[Image here]]
“A. Did not.”
Clopton admits that he did not have a license. Clopton testified:
“Q. At the time you were arrested, did you have a license?
“A. No. sir.
[[Image here]]
“Q. When you were working the deck as a fisherman, have you ever had a commercial license?
“A. Never.”
Because Clopton was fishing for non-game fish in a navigable stream or river in Alabama without a license, and because § 9-11-142 does not distinguish between fresh and salt water in its requirement that an individual secure a license before using commercial fishing devices, we conclude *1094 that the trial court correctly convicted Clopton of fishing without a license.
UNTAGGED GEAR
The Court of Criminal Appeals reversed White’s conviction for fishing with untagged commercial gear, on the ground that “the prosecution failed to prove whether they were fishing in fresh or salt water as a matter of fact.” The State maintains that the Court of Criminal Appeals erred when it reversed White’s conviction on this charge, because, it argues, Ala.Code 1975, § 9-11-147, does not require a determination of whether White was fishing in fresh water or in salt water in order to support a conviction for fishing with untagged commercial gear. Section 9-11-147 provides:
“It shall be unlawful for any person to use any of the fishing gear [referred to in another section] in the public impounded waters and navigable streams of this state without marking their location ... and identifying such nets and lines by showing the license number in plain figures upon the buoys or floats. The license number must be attached to all seines and nets, and at least one such buoy shall bear the name and address of the owner.”
White, who was also fishing in the navigable waters of Alabama, failed to tag his net. Sanford testified:
“Q. And do the rules and regulations require that nets this size be tagged?
“A. Yes, sir. It does.
“Q. And was this net, in fact, tagged anywhere, which is required by the rules and regulations of the laws of this state?
“A. No, it was not.
“Q. And you issued Mr. White that citation?
“A. Yes, sir.”
Because White was fishing in the navigable waters of Alabama with untagged commercial gear, and because Alabama Code 1975, § 9-11-147, does not distinguish between fresh and salt water, we conclude that the trial court correctly convicted White of fishing with untagged commercial gear.
Accordingly, the judgment of the Court of Criminal Appeals is affirmed as to the convictions for fishing with illegal commercial gear, but it is reversed as to the convictions for fishing without a license and fishing with untagged commercial gear, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.